```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
SEGUNDO PESANTEZ and NELSON IVAN YANEZ
AUCAY,

                            Plaintiffs,            REPORT AND
                                                   RECOMMENDATION
         -against-                                 23-CV-4271-OEM-SJB

SADKME CONSTRUCTION CORP. and JORGE
BUNAY ANDRANGO,

                            Defendants.
----------------------------------------------------------------X
```

**BULSARA, United States Magistrate Judge:**

On June 9, 2023, Plaintiffs Segundo Pesantez ("Pesantez") and Nelson Ivan Yanez Aucay ("Aucay," and collectively, "Plaintiffs") brought this action against SADKME Construction Corp. ("SADKME") and Jorge Bunay Andrango ("Andrango," and collectively, "Defendants"), alleging violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201–219 and the New York Labor Law ("NYLL"), N.Y. Lab. Law §§ 160–199. (Compl. dated June 9, 2023 ("Compl."), Dkt. No. 1). Following Defendants' default, Plaintiffs moved for a default judgment. (Mot. for Default J. dated Nov. 9, 2023 ("Default J. Mot."), Dkt. No. 15). For the reasons stated below, it is respectfully recommended that the motion be granted, as indicated herein.

FACTUAL BACKGROUND AND PROCEDURAL HISTORY

SADKME is a New York construction corporation with its principal place of business in Brooklyn. (Compl. ¶ 10). SADKME managed various construction sites in Brooklyn and New Jersey. (*Id.* ¶ 7).[1] Andrango (also known as "Geovani" and "Carlos")

---

[1] The construction sites listed in the Complaint are: 278 South 2, Apt. #16, Brooklyn, NY; 117 South 4, Apt. #22, Brooklyn, NY; 300 Palisade Avenue, Jersey City,

is the owner and operator of SADKME, who manages the day-to-day operations of the business and has final power and authority over all personnel decisions. (*Id.* ¶¶ 11–17).

Pesantez was employed as a "helper" and pipe and concrete worker by Defendants from February 2020 to March 2022. (*Id.* ¶ 21). Pesantez routinely worked five days per week for a total of 64 hours each week: three days each week, he worked from 8:00 A.M. to 8:00 P.M., for 12 hours per day; and two days each week, he worked from 8:00 A.M. to 10:00 P.M., for 14 hours per day. (*Id.* ¶¶ 23–24). Defendants paid Pesantez a set weekly wage of $862.00, regardless of the number of hours he worked, (*id.* ¶ 25), and did not pay him overtime wages. (Compl. ¶ 26). In addition, they did not pay Pesantez any of his wages for his last 12 weeks of work. (*Id.* ¶ 28). Lastly, from October 2020 to March 2022, Defendants paid Pesantez on a bi-weekly basis, instead of on a weekly basis. (*Id.* ¶ 27).

Aucay was employed as a painter, and wood and concrete worker by Defendants from August 2017 to September 2022. (*Id.* ¶ 29). Aucay routinely worked six days per week, from 8:00 A.M. to 8:00 P.M., for 12 hours each day, for a total of 72 hours per week. (*Id.* ¶¶ 30–32). Defendants also only paid Aucay a flat wage throughout his employment, regardless of the number of hours he worked: from August 2017 to December 2020, he was paid $180 per day; from January 2021 to December 2021, he was paid $200 per day; and from January 2022 to September 2022, he was paid $230 per day. (*Id.* ¶ 33). Defendants did not pay Aucay overtime wages. (Compl. ¶ 34). And they did not pay Pesantez any of his wages for his last five weeks of work. (*Id.* ¶ 36). Lastly, for the entire time Defendants employed Aucay, they paid Aucay on a bi-weekly

---

NJ; 220 Skillman Street, Brooklyn, NY; 814 Knickerbocker, Brooklyn, NY; and 716 Princeton Road, Linden, NJ. (Compl. ¶ 7).

2

basis, instead of on a weekly basis. (*Id.* ¶ 35). Both Pesantez and Aucay also allege that Defendants failed to follow various state notice and record-keeping requirements, as required by the Wage Theft Prevention Act. (*Id.* ¶¶ 37–40).

Plaintiffs commenced this action on June 9, 2023. (Compl.). The Complaint alleges seven causes of action: (1) failure to pay overtime compensation under FLSA; (2) failure to pay overtime wages under NYLL; (3) failure to pay minimum wage under FLSA; (4) failure to pay minimum wage under NYLL; (5) violation of the frequency of pay provision under NYLL § 191; (6) failure to provide wage statements under NYLL § 195(3); and (7) failure to provide a wage notice under NYLL § 195(1). (*Id.* ¶¶ 54–82).

SADKME was served with a summons and a copy of the Complaint via the New York Secretary of State on June 21, 2023. (Summons Returned Executed dated July 6, 2023, Dkt. No. 9). Andrango was served with a summons and the Complaint at his last known residence on August 2, 2023. (Summons Returned Executed dated Aug. 8, 2023, Dkt. No. 11). The process server attested to leaving the summons and Complaint with Andrango's daughter, Amanda Tlaseca, a person of suitable age and discretion. (*Id.*).

After Defendants failed to appear, and the Clerk entered default against them, (Clerk's Entry of Default dated Sept. 14, 2023 ("Clerk's Entry of Default"), Dkt. No. 13), Plaintiffs moved for default judgment. (Default J. Mot.). They filed proof of service of the default judgment papers on the public docket. (Aff. of Service dated Nov. 9, 2023, Dkt. No. 18).[2]

---

[2] Plaintiffs served the default judgment papers on both SADKME and Andrango at the address 147 Sanford Street, Apt. 2, Brooklyn, NY 11205. (Aff. of Service dated Nov. 9, 2023, Dkt. No. 18). This is the same address at which Andrango was served with the summons and Complaint, which Plaintiff's process server attested was also Andrango's last known residence and usual place of abode. (Summons Returned Executed dated Aug. 8, 2023, Dkt. No. 11). Since the business and personal addresses

3

DISCUSSION

I. Entry of Default

Rule 55 of the Federal Rules of Civil Procedure establishes a two-step process for obtaining a default judgment. *See Shariff v. Beach 90th St. Realty Corp.*, No. 11-CV-2551, 2013 WL 6835157, at *3 (E.D.N.Y. Dec. 20, 2013) (adopting report and recommendation). First, "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). Second, after default has been entered, and the defendant fails to appear or move to set aside the default under Rule 55(c), the Court may, on plaintiff's motion, enter a default judgment against that defendant. Fed. R. Civ. P. 55(b)(2). The Clerk of Court entered a default against SADKME and Andrango on September 14, 2023. (Clerk's Entry of Default).

The next question, before reaching liability or damages, is whether Defendants' conduct is sufficient to warrant entry of a default judgment. In determining whether to enter a default judgment, the Court is guided by the same factors that apply to a motion to set aside entry of a default. *See Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 96 (2d Cir. 1993); *Pecarsky v. Galaxiworld.com, Ltd.*, 249 F.3d 167, 170–71 (2d Cir. 2001). These factors are "1) whether the defendant's default was willful; 2) whether defendant has a meritorious defense to plaintiff's claims; and 3) the level of prejudice the non-defaulting party would suffer as a result of the denial of the motion for default judgment." *Mason Tenders Dist. Council v. Duce Constr. Corp.*, No. 02-CV-9044, 2003 WL 1960584, at *2 (S.D.N.Y. Apr. 25, 2003).

---

are the same, Plaintiff's service of the default judgment papers therefore complies with Local Civil Rule 55.2.

4

First, Defendants' failure to respond to the Complaint demonstrates their default was willful. *See, e.g., Indymac Bank v. Nat'l Settlement Agency, Inc.*, No. 07-CV-6865, 2007 WL 4468652, at *1 (S.D.N.Y. Dec. 20, 2007) (finding that the defendants' non-appearance and failure to respond "indicate willful conduct" and granting plaintiff default judgment against them). They were properly served with the summons and Complaint. (Summons Returned Executed dated July 6, 2023, Dkt. No. 9; Summons Returned Executed dated Aug. 8, 2023, Dkt. No. 11). The motion for default judgment and supporting papers were also served via mail to Defendants' last known address. (Aff. of Service dated Nov. 9, 2023, Dkt. No. 18). Notwithstanding this notice and service, Defendants did not respond to the Complaint, did not appear, and have not in any way attempted to defend themselves. *See, e.g., Sola Franchise Corp. v. Solo Salon Studios Inc.*, No. 14-CV-946, 2015 WL 1299259, at *6 (E.D.N.Y. Mar. 23, 2015) (adopting report and recommendation) ("Defendant has not responded to Plaintiffs' motion for default judgment, has not appeared in this action, and has not communicated with the Court in any way. Accordingly, Defendant's failure to answer the Complaint and to respond to the instant motion is sufficient to establish willfulness.").

Second, the Court cannot conclude there is any meritorious defense to Plaintiffs' allegations because Defendants did not appear, and no defense has been presented to the Court. *E.g., United States v. Hemberger*, No. 11-CV-2241, 2012 WL 1657192, at *2 (E.D.N.Y. May 7, 2012); *Indymac Bank*, 2007 WL 4468652, at *1.

Third, Plaintiffs would be prejudiced if the motion for default judgment were denied, "as there are no additional steps available to secure relief in this Court." *Bridge Oil Ltd. v. Emerald Reefer Lines, LLC*, No. 06-CV-14226, 2008 WL 5560868, at *2

5

(S.D.N.Y. Oct. 27, 2008), *report and recommendation adopted*, Order (Jan. 26, 2009); *Sola Franchise Corp.*, 2015 WL 1299259, at *15 (finding the prejudice element was met because "[w]ithout the entry of a default judgment, Plaintiffs would be unable to recover for the claims").

As a result, all three factors weigh in favor of the entry of default judgment. The Court now turns to the liability imposed, damages, and other relief to be awarded.

II. Liability

In deciding a motion for default judgment, a court "is required to accept all of the [plaintiff's] factual allegations as true and draw all reasonable inferences in [her] favor." *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009). A party's default is deemed an admission of all well-pleaded allegations of liability. *See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992); *Morales v. B&M Gen. Renovation Inc.*, No. 14-CV-7290, 2016 WL 1266624, at *2 (E.D.N.Y. Mar. 9, 2016), *report and recommendation adopted*, 2016 WL 1258482, at *2 (Mar. 29, 2016). "Only after the district court is convinced that the facts meet the elements of the relevant cause of action—whether those facts are established by well-pleaded allegations or proven by admissible evidence—may the district court enter a default judgment." *Henry v. Oluwole*, No. 21-CV-2468, 2024 WL 3404958, at *6 (2d Cir. July 15, 2024).

"Nevertheless, it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit conclusions of law." *LaBarbera v. ASTC Laby's Inc.*, 752 F. Supp. 2d 263, 270 (E.D.N.Y. 2010) (adopting report and recommendation) (citation and quotations omitted); *see also* 10A Charles Alan Wright & Arthur R. Miller et al., *Federal Practice and Procedure* § 2688.1 (4th ed. 2022) ("Once the default is established, defendant has no further

6

standing to contest the factual allegations of plaintiff's claim for relief. Even after default, however, it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit conclusions of law." (footnote omitted)). "[T]he court must accept all well-pleaded allegations in the complaint as true, except those pertaining to the amount of damages." *Pineda v. Masonry Constr., Inc.*, 831 F. Supp. 2d 666, 675 (S.D.N.Y. 2011) (first citing Fed. R. Civ. P. 8(b)(6); and then citing *Romanowicz*, 577 F.3d at 83 n.6).

A. <u>NYLL Unpaid Minimum Wages Claim</u>

Plaintiffs allege that Defendants failed to pay them for the last weeks of their employment. Pesantez alleges that Defendants did not pay him anything for the last 12 weeks of his employment. (Compl. ¶ 28; *see* Pls.' Damages Calculations ("Pls.' Damages"), attached as Ex. F to Aff. of Avraham Y. Scher ("Scher Aff."), Dkt. No. 16-6 at 2). Aucay also alleges that Defendants did not pay him anything but for the last five weeks of his employment. (Compl. ¶ 36; Pls.' Damages at 3). This is sufficient on default—it is self-evident that non-payments of any wages is a failure to pay minimum wage, and thus, Defendants are liable for minimum wage violations under the NYLL.[3]

B. <u>Unpaid Overtime Wages Claims</u>

Plaintiffs allege that Defendants violated the overtime provisions of both FLSA and NYLL. The Court finds that they have established liability under both statutes.

FLSA's overtime wage requirement provides that an employee working "in excess of" 40 hours in a given workweek be compensated for that "excess work 'at a rate not

---

[3] Plaintiffs also assert a cause of action for unpaid minimum wages under FLSA. (Compl. ¶¶ 65–68). The Court does not address this claim because any damages overlap with the same claim under NYLL.

7

less than one and one-half times the regular rate at which he is employed[.]'"[4] *Lundy v. Cath. Health Sys. of Long Island Inc.*, 711 F.3d 106, 114 (2d Cir. 2013) (quoting 29 U.S.C. § 207(a)(1)). Similarly, NYLL's overtime provision specifies that eight hours constitutes a "legal day's work," NYLL § 160(3), and that "[a]n employer shall pay an employee for overtime at a wage rate of one and one-half times the employee's regular rate." N.Y. Comp. Codes R. & Regs. ("N.Y.C.R.R.") tit. 12, § 142-2.2.

The Complaint states that Pesantez worked more than 40 hours each week for Defendants from February 2020 to March 2022: he worked 12 hours per day, from 8:00 A.M. to 8:00 P.M. three days per week, and 14 hours per day, from 8:00 A.M. to 10:00 P.M. two days per week, for a total of 64 hours each week. (Compl. ¶¶ 23–24). Pesantez was not paid at a wage rate of time and a half for his hours regularly worked in excess of 40 hours per week. (*Id.* ¶ 26). The Complaint also states that Aucay worked more than 40 hours each week for Defendants from August 2017 to December 2020: he worked 12 hours per day, from 8:00 A.M. to 8:00 P.M., six days per week, for a total of 72 hours per week. (*Id.* ¶¶ 30–32). Aucay was also not paid time and a half for the hours he regularly worked in excess of 40 hours per week. (*Id.* ¶ 34). The Complaint contains the necessary factual allegations to state overtime violations and the Court therefore finds Defendants liable for violations of FLSA and NYLL's overtime provisions.

---

[4] In other words, under FLSA, unpaid overtime wages are calculated by first determining the employee's regular hourly rate, and then multiplying that number by 1.5. The regular hourly rate is determined by "dividing the salary by the number of hours which the salary is intended to compensate," 29 C.F.R. § 778.113(a), or the applicable minimum wage if the regular rate falls below the applicable minimum. *Id.* § 778.5.

8

C.  Frequency of Pay Claim Under NYLL § 191

Defendants are liable for failing to timely pay Plaintiffs wages under NYLL § 191. NYLL § 191, which is in article 6 of the NYLL, requires that "manual worker[s]" be "paid weekly and not later than seven calendar days after the end of the week in which wages are earned." NYLL § 191(1)(a).[5] Separately, under NYLL § 198(1-a), an employee who is "paid less than the wage to which he or she is entitled under the provisions of [article 6]" may initiate a private "wage claim" in the courts "to recover the full amount of any underpayment of wages." *Id.* § 198(1-a).[6]

Pesantez alleges that, from October 1, 2020 to March 31, 2022, Defendants paid him bi-weekly and in so doing, delayed his payment of $862 every other week. (Compl. ¶ 27; *see* Pls.' Damages at 2). Aucay similarly alleges that Defendants paid him bi-weekly every other week, from August 1, 2017 to September 30, 2022. (Compl. ¶ 35; *see* Pls.' Damages at 3). Accordingly, the Court finds that Defendants are liable for violations of NYLL § 191.

---

[5] Pesantez worked for Defendants as a pipe and concrete worker, and Aucay was a painter, and wood and concrete worker. (Compl. ¶¶ 21, 29). This is sufficient on default to allege that they are covered as manual workers under section 191. *See, e.g.*, *Yunganaula v. D.P. Grp. Gen. Contractors/Developers Inc.*, No. 21-CV-2015, 2024 WL 924534, at *8 (E.D.N.Y. Mar. 4, 2024) (finding on default that construction workers who alleged they were manual laborers were covered by section 191), *report and recommendation adopted as modified*, 2024 WL 1342739, at *3 (Mar. 29, 2024).

[6] The New York Court of Appeals has not resolved whether NYLL § 191 provides a private cause of action. *See, e.g.*, *Aguilar v. Calexico Cinco LLC*, No. 22-CV-6345, 2024 U.S. Dist. LEXIS 115935, at *23–*27 (E.D.N.Y. June 28, 2024) (discussing split between the Appellate Division, First Department and Second Department on private cause of action in section 191), *report and recommendation adopted*, Order (Aug. 13, 2024). However, "the Court of Appeals would likely adopt the reasoning expressed [by the First Department] in *Vega* [*v. CM & Assocs. Constr. Mgmt., LLC*, 175 A.D.3d 1144 (1st Dep't 2019)] and find an express private right of action in NYLL § 191 and § 198." *Id.* at *27.

9

    D.  <u>Wage Theft Prevention Act Claims</u>

New York's Wage Theft Prevention Act ("WTPA") requires employers to provide written wage notice "within 10 business days of his first day of employment." *Hernandez v. JRPAC Inc.*, No. 14-CV-4176, 2016 WL 3248493, at *29 (S.D.N.Y. June 9, 2016).

> [E]mployers [must] provide their employees a written notice with the following information: (1) the rate or rates of pay and basis thereof; (2) allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; (3) the regular pay day designated by the employer; (4) the employer's name; (5) any "doing business as" names used by the employer; (6) the physical address of the employer's main office or principal place of business, and a mailing address if different; (7) the employer's telephone number; and (8) such other information as the commissioner deems material and necessary.

*Id.* (quoting *Salinas*, 123 F. Supp. 3d at 474). The written notice must be "in writing in English and in the language identified by each employee as the primary language of such employee." NYLL § 195(1)(a). The WTPA also requires that employers provide employees wage statements "with every payment of wages" that contain, among other things, the dates of work covered by the statement, the rate of pay, and gross and net wages paid. *Id.* § 195(3).

The Complaint alleges that Defendants never provided either Pesantez or Aucay with a wage notice. (Compl. ¶ 39). They were also never provided an accurate wage statement with each payment, as required by the WTPA. (*Id.* ¶ 40). Accordingly, Plaintiffs have sufficiently established liability on these claims. *See Lopez v. Royal Thai Plus, LLC*, No. 16-CV-4028, 2018 WL 1770660, at *8 (E.D.N.Y. Feb. 6, 2018), *report and recommendation adopted*, 2018 WL 1770555, at *2 (Apr. 12, 2018).

10

III.　Damages

"While a party's default is deemed to constitute a concession of all well pleaded allegations of liability, it is not considered an admission of damages." *Greyhound Exhibitgroup*, 973 F.2d at 158. "Although the default establishes a defendant's liability, unless the amount of damages is certain, the court is required to make an independent determination of the sum to be awarded." *Griffiths v. Francillon*, No. 10-CV-3101, 2012 WL 1341077, at *1 (E.D.N.Y. Jan. 30, 2012) (quotations and citations omitted), *report and recommendation adopted*, 2012 WL 1354481, at *2 (Apr. 13, 2012). "The court must conduct an inquiry to ascertain the amount of damages with reasonable certainty." *Joe Hand Promotions, Inc. v. El Norteno Rest. Corp.*, No. 06-CV-1878, 2007 WL 2891016, at *2 (E.D.N.Y. Sept. 28, 2007) (citing *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 111 (2d Cir. 1992)). "Where, on a damages inquest, a plaintiff fails to demonstrate its damages to a reasonable certainty, the court should decline to award any damages even though liability has been established through default." *Lenard v. Design Studio*, 889 F. Supp. 2d 518, 527 (S.D.N.Y. 2012) (adopting report and recommendation) (collecting cases).

That being said, because under FLSA "[t]he burden is on an employer properly to record hours," a "plaintiff need not compute FLSA damages with precision." *Harold Levinson Assocs., Inc. v. Chao*, 37 F. App'x 19, 20–21 (2d Cir. 2002). An employee may meet her burden of showing the amount and extent of her hours worked through her own recollection. *See Pineda*, 831 F. Supp. at 674. As such, "[i]n a FLSA case, in the absence of rebuttal by defendants, plaintiffs' recollection and estimates of hours worked are presumed to be correct." *Ting Yao Lin v. Hayashi Ya II, Inc.*, No. 08-CV-6071, 2009 WL 289653, at *3 (S.D.N.Y. Jan. 30, 2009) (collecting cases), *report and*

11

*recommendation adopted*, 2009 WL 513371, at \*1 (Feb. 27, 2009); *see also McLean v. Wayside Outreach Dev. Inc.*, 624 F. App'x 44, 45 (2d Cir. 2015) (holding that district court did not abuse its discretion by failing to hold a hearing to determine damages where the court relied on "a single affidavit only partially based upon real numbers" (citations omitted)).

    A.  <u>Unpaid Minimum Wages</u>

Pesantez was paid $862 per week, and he worked 64 hours per week, meaning that his effective hourly rate was $13.47 ($862 / 64 hours per week). (Compl. ¶ 25; Pls.' Damages at 2). This was below the applicable New York State minimum wage for the entire time that Pesantez worked. *See History of the Minimum Wage in New York State*, N.Y. State Dep't of Lab., https://dol.ny.gov/history-minimum-wage-new-york-state (last visited Aug. 19, 2024) (noting that between December 31, 2018 and January 1, 2024, the minimum wage rate for employers with 11 or more employees was $15.00 per hour).[7]

Aucay was paid above the applicable minimum wage: between August 2017 and December 2020, he was paid $180 per day, or $15.00 per hour; between January 2021 and December 2021, he was paid $200 per day, or $16.67 per hour; and between January 2022 and September 2022, he was paid $230 per day, or $19.17 per hour. (Pls.' Damages at 3).

Plaintiffs successfully alleged that they were not paid any of their wages for the last weeks of their employment by Defendants. Pesantez alleged that he was not paid for his last 12 weeks of work. (Compl. ¶ 28). Thus, at a rate of $15.00 per hour (or, the

---

[7] The Complaint alleges that Defendants employed more than 15 employees when Plaintiffs worked for them. (Compl. ¶ 44).

12

minimum wage, since his effective hourly rate was below minimum wage), he is entitled to $7,200.00 in unpaid wages for those 12 weeks. Aucay alleged that he was not paid for his last five weeks of work. (*Id.* ¶ 36). At his applicable hourly rate of $19.17, he is entitled to $3,834.00 in unpaid wages for those five weeks. These amounts do not include any overtime, which is separately calculated below.

B. Unpaid Overtime Wages

Both federal and state law require that employers pay employees a 50% premium for their overtime hours—that is, the hours in excess of 40 that they have worked in each work week. 29 C.F.R. § 778.105; 12 N.Y.C.R.R. § 146-1.4. Although Defendants are liable under both FLSA and NYLL for failing to pay Plaintiffs' overtime wages, Plaintiffs cannot recover unpaid overtime compensation under both statutes for any period of overlapping work. *See Pinzon v. Paul Lent Mech. Sys. Inc.*, No. 11-CV-3384, 2012 WL 4174725, at *3 (E.D.N.Y. Aug. 21, 2012) (holding that a plaintiff may "not double dip" or obtain a "double recovery" of unpaid overtime wages under FLSA and the NYLL), *report and recommendation adopted*, 2012 WL 4174410, at *1 (Sept. 19, 2012). "If a plaintiff is entitled to damages under both federal and state wage law, the Court has discretion to award [that plaintiff] damages under the statute providing the greatest amount of relief." *Gamero v. Koodo Sushi Corp.*, 272 F. Supp. 3d 481, 498 (S.D.N.Y. 2017) (alteration in original) (quotations omitted), *aff'd*, 752 F. App'x 33, 37 (2d Cir. 2018).

To calculate the sum of unpaid overtime, the Court must first calculate the regular rate of pay. As determined above, *see supra* at p. 12, Pesantez's regular rate of pay was $13.47 per hour—but because this is below the applicable minimum wage, the Court uses $15.00 per hour as his regular rate of pay, in order to calculate his overtime rate. Pesantez alleges, in the Complaint and in Plaintiffs' damages calculations, that he

13

worked 64 hours per week throughout his employment, of which 24 hours would constitute overtime. (Compl. ¶ 26; Pls.' Damages at 2). The overtime hourly rate is 1.5 times the hourly rate, which results in Pesantez being owed $22.50 for each overtime hour worked between February 1, 2020 and March 31, 2022 (or, 112.71 weeks).[8] Thus, Pesantez is entitled to $24,426.51 in unpaid overtime wages.[9]

Aucay's regular rate of pay throughout his employment was as follows: between August 2017 and December 2020, he was paid $15.00 per hour; between January 2021 and December 2021, he was paid $16.67 per hour; and between January 2022 and September 2022, he was paid $19.17 per hour. (Pls.' Damages at 3). Aucay alleges that he regularly worked 72 hours per week, of which 32 hours would constitute overtime. (Compl. ¶ 34; Pls.' Damages at 3). Thus, Aucay's overtime rates are as follows: between August 2017 and December 2020, he is owed $22.50 per overtime hour; between

---

[8] The Court calculates the difference between the minimum wage ($15.00) and overtime rate ($22.50), multiplies that by the number of overtime hours worked per week (24), multiplied by the number of weeks worked (112.71 weeks).

[9] Plaintiffs request $90,879.43 in unpaid overtime wages for Pesantez. (Pls.' Damages at 2). The discrepancy between their calculations and the Court's is two-fold. *First*, Plaintiffs calculated Pesantez's overtime for 117.14 weeks, between January 1, 2020 and March 31, 2022. (*Id.*). However, in the same chart (and throughout the Complaint, memorandum of law, and other materials), Plaintiffs acknowledge that Pesantez only started working for Defendants on February 1, 2020. (*Id.*; Compl. ¶ 21; Pls.' Mem. of Law in Supp. of Default J. Mot. ("Mem. of Law"), Dkt. No. 17 at 16). Thus, the Court calculates Pesantez's overtime beginning on February 1, 2020. *Second*, Plaintiffs incorrectly calculated Pesantez's overtime by multiplying the number of overtime hours (24) by the overtime hourly rate ($22.50) by the number of weeks worked. (Pls.' Damages at 2). "This formula assumes that Plaintiff was never paid *any* amount each week," *Pich v. Queens Garden Nursery Inc.*, No. 22-CV-3362, 2024 WL 687234, at *11 (E.D.N.Y. Feb. 20, 2024), *report and recommendation adopted*, 2024 WL 967636, at *2 (Mar. 6, 2024), contrary to the Complaint, which alleges that he received $892 per week for all 64 hours worked, (Compl. ¶ 25). But while Pesantez was not paid his overtime premium pay for hours worked over 40, "he was paid at least his regular rate of pay." *Pich*, 2024 WL 967636, at *11.

14

January 2021 and December 2021, he is owed $25.00 per overtime hour; and between January 2022 and September 2022, he is owed $28.75 per overtime hour. (Pls.' Damages at 3). Thus, Aucay is entitled to $68,571.43 in unpaid overtime wages, for 269.15 weeks of work. (*Id.*).

The Court's calculations for both Plaintiffs are summarized in the chart below.

| Plaintiff | Time Period | Hours Worked Per Week | Overtime Hours Per Week | Overtime Rate | Difference Between Overtime and Regular Rate | Weeks Worked | Overtime Wages Owed |
|---|---|---|---|---|---|---|---|
| **Pesantez** | Feb. 1, 2020–Mar. 31, 2022 | 64 | 24 | $22.50 | $9.03 | 112.71 | $24,426.51 |
| **Aucay** | Aug. 2017–Dec. 2020 | 72 | 32 | $22.50 | $7.50 | 178.29 | $42,789.60 |
| | Jan. 2021–Dec. 2021 | 72 | 32 | $25.00 | $8.33 | 52 | $13,866.67 |
| | Jan. 2022–Sept. 2022 | 72 | 32 | $28.75 | $9.58 | 38.86 | $11,917.07 |
| | | | | | | Total | $92,999.84 |

C. Liquidated Damages

Plaintiffs seek liquidated damages under NYLL. (Mem. of Law at 20).

An employee can recover liquidated damages under NYLL "unless the employer proves a good faith basis for believing that its underpayment of wages was in compliance with the law." NYLL § 198(1-a). For all NYLL claims that accrued on or after April 9, 2011, an employer is liable for liquidated damages equal to one hundred percent of the total amount of wages found to be due. *Id.* § 663(1).

In light of the default by Defendants, there has been no showing that they acted in good faith or that the Court should exercise its discretion to deny liquidated damages. *See Brock v. Wiliamowsky*, 833 F.2d 11, 19 (2d Cir. 1987) (noting that employer bears burden of establishing good faith defense under § 260 through "plain and substantial evidence"); *Khan v. IBI Armored Servs., Inc.*, 474 F. Supp. 2d 448, 459 (E.D.N.Y. 2007)

15

("Simply put, double damages are the norm, single damages the exception, the burden on the employer." (quotations and citation omitted)); *Xochimitl v. Pita Grill of Hell's Kitchen, Inc.*, No. 14-CV-10234, 2016 WL 4704917, at *15 (S.D.N.Y. Sept. 8, 2016), *report and recommendation adopted*, 2016 WL 6879258, at *1 (Nov. 21, 2016). Therefore, the Court recommends that liquidated damages be awarded under NYLL.

Based on the recommendation that Pesantez be awarded $7,200.00 in unpaid minimum wages and $24,426.51 in unpaid overtime wages, the Court recommends that Pesantez be awarded $31,626.51 in liquidated damages. Similarly, based on the recommendation that Aucay be awarded $3,834.00 in unpaid minimum wages and $68,571.43 in unpaid overtime wages, the Court recommends that Aucay be awarded $72,405.43 in liquidated damages.

D. Frequency of Pay Liquidated Damages

"[NYLL § 191] has been interpreted by courts in this district to allow plaintiffs to pursue a claim to recover the underpayment [of their frequency of pay violation] as liquidated damages." *Williams v. Miracle Mile Properties 2 LLC*, No. 20-CV-3127, 2022 WL 1003854, at *9 (E.D.N.Y. Feb. 1, 2022) (collecting cases), *report and recommendation adopted*, Order (Mar. 25, 2022); *see also Ramirez v. Urion Constr. LLC*, 674 F. Supp. 3d 42, 53 (S.D.N.Y. 2023) ("Although draconian, support for such damages is found in the liquidated damages provision of NYLL § 198(1-a), which allows an employee to recover 'an additional amount as liquidated damages equal to one hundred percent of the total amount of the wages found to be due.'" (quoting NYLL § 198(1-a)).

For Pesantez, Defendants delayed his payment of $862 every other week from October 1, 2020 to March 31, 2022. (Pls.' Damages at 2). However, because this weekly

16

payment was below the applicable minimum wage, *see supra* at pp. 12–13, his true regular rate was $15.00 per hour. *See* NYLL § 198(1-a) (allowing an employee to recover "an additional amount as liquidated damages equal to one hundred percent of the *total amount of wages found to be due*." (emphasis added)). Pesantez worked 64 hours per week. (Pls.' Damages at 2). Thus, Pesantez is entitled to $37,440.00 in liquidated damages. For Aucay, Defendants delayed his payment of $1,080 every other week from August 1, 2017 to December 31, 2020, his payment of $1,200 every other week from January 1, 2021 to December 31, 2021, and his payment of $1,380 every other week from January 1, 2022 to September 30, 2022. (*Id.* at 3). Aucay worked 72 hours per week. (*Id.*). Thus, Aucay is entitled to $154,296.62 in liquidated damages.

    E. <u>Wage Theft Prevention Act Damages</u>

Pesantez worked for Defendants for almost two years, and Aucay worked for them for more than five years. (Compl. ¶¶ 21, 29). For the wage notice claim, they are each entitled to recover $50 per day up to a maximum of $5,000. NYLL § 198(1-b). For the wage statement claim, they are each entitled to recover $250 per day up to a maximum of $5,000. *Id.* § 198(1-d). Because Plaintiffs never received a wage notice or wage statement from Defendants, and because both worked for Defendants for well over 100 days, they are both entitled to the statutory maximum of $5,000 each under each provision. *E.g.*, *Diaz v. KC Plumbing, LLC*, No. 19-CV-4321, 2021 WL 7500316, at *9 (E.D.N.Y. Mar. 1, 2021), *report and recommendation adopted*, Order (Mar. 23, 2021); *De Los Santos v. Marte Constr., Inc.*, No. 18-CV-10748, 2020 WL 8549054, at *8 (S.D.N.Y. Nov. 25, 2020), *report and recommendation adopted*, 2020 WL 8549055, at *2 (Dec. 17, 2020). Therefore, Plaintiffs should be awarded a total of $20,000 in WTPA damages.

F. <u>Post-Judgment Interest</u>

Plaintiffs also requests post-judgment interest pursuant to NYLL § 198(4) and 28 U.S.C. § 1961. (Mem. of Law at 23–24). "The award of post-judgment interest is mandatory on awards in civil cases as of the date judgment is entered." *Lewis v. Whelan*, 99 F.3d 542, 545 (2d Cir. 1996) (quoting 28 U.S.C. § 1961(a)). The Court therefore recommends a post-judgment interest award on the total damages, at the rate set forth in 28 U.S.C. § 1961, calculated from the date on which the Clerk of Court enters judgment until the date of payment. *See Fermin*, 93 F. Supp. 3d at 53 (listing cases and awarding post-judgment interest in FLSA cases).

## CONCLUSION

For the reasons stated above, it is respectfully recommended that default judgment be entered against Defendants. The Court recommends that Pesantez be awarded:

- $7,200.00 in unpaid minimum wages;
- $24,426.51 in unpaid overtime wages;
- $31,626.51 in liquidated damages;
- $37,440.00 in frequency of pay damages;
- $10,000 in Wage Theft Prevention Act damages; and
- Post-judgment interest in an amount to be calculated by the Clerk of Court pursuant to 28 U.S.C. § 1961(a).

The Court recommends that Aucay be awarded:

- $3,834.00 in unpaid minimum wages;
- $68,571.43 in unpaid overtime wages;

- $72,405.43 in liquidated damages;

- $154,296.62 in frequency of pay damages;

- $10,000 in Wage Theft Prevention Act damages; and

- Post-judgment interest in an amount to be calculated by the Clerk of Court pursuant to 28 U.S.C. § 1961(a).

Any objections to the Report and Recommendation above must be filed with the Clerk of the Court within 14 days of service of this report. Failure to file objections within the specified time may waive the right to appeal any judgment or order entered by the District Court in reliance on this Report and Recommendation. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); *see also Caidor v. Onondaga County*, 517 F.3d 601, 604 (2d Cir. 2008) ("[F]ailure to object timely to a magistrate[] [judge's] report operates as a waiver of any further judicial review of the magistrate[] [judge's] decision." (quotations omitted)).

Plaintiffs are directed to serve a copy of this Report and Recommendation on Defendants and file proof of such service on the docket.

SO ORDERED.

*/s/ Sanket J. Bulsara*  August 19, 2024
SANKET J. BULSARA
United States Magistrate Judge

Brooklyn, New York